UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| vs. | : CRIMINAL NO. 3:05-CR-178-AVC |
| IRA BLOOM | : February 12, 2024 |

### OPPOSED MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE

Ira Bloom moves pursuant to 18 U.S.C. § 3583(e)(1) for early termination of supervised release. Mr. Bloom has served 25 months of his 60-month term of supervision. He has steady work, has recently married, and has plans for the future. He believes he has accomplished the "rehabilitative purpose" of supervision, and additional supervision is no longer necessary. *United States v. Trotter*, 321 F. Supp. 3d 337, 345 (E.D.N.Y. July 13, 2018). Both the Government and United States Probation Officer Ivette Farfan, who supervises Mr. Bloom where he resides in the Eastern District of New York, oppose early termination for Mr. Bloom.

### BACKGROUND

In July 2005, Ira Bloom was charged with attempting to hire a hit man to kill his ex-wife. He went to trial, and on October 6, 2006, was found guilty on both counts of a superseding indictment charging him with two instances of the use of, and travel in, interstate commerce in the commission of murder for hire, in violation of 18 U.S.C. § 1958(a). He was sentenced to the statutory maximum of 120 months in prison on each count, to be served consecutively, and five years of supervised release. At his sentencing, he was found to qualify as a career offender under the guidelines due to previous assault convictions in Massachusetts. See Government sentencing memo, Doc. # 132 at 1.

In 2020, amid the COVID pandemic, Mr. Bloom sought a reduction in sentence on the grounds that his age and medical conditions, combined with the unhealthy environment in federal prisons, exposed him to significant danger from COVID-19. The Court rejected the request, finding that Mr. Bloom represented a continued danger to the community based on the nature of his offense and his previous convictions.

Mr. Bloom was released from BOP on January 13, 2022. He has now completed 25 months of his 60 month term of supervision. He works as a driver for two different car hire services, catering exclusively to Jewish passengers in Brooklyn and the larger New York Area. He says he works very hard, driving 18-20 hours a day, and uses cat naps in the car while waiting for passengers at airport arrivals to refresh himself. His health continues to be poor – he has back and neck problems, and has recently had surgery for spine issues. His wife, who he married approximately nine months ago, works as a day care aide in the nursery affiliated with a local private school.

Despite the gruesome nature of the crime he was convicted of, Mr. Bloom has not reoffended, primarily because of the outpouring of support from his local religious community. He does not make a great deal of money in his driving job, but he and his new wife manage with occasional grants from their coreligionists and even some food stamps. That material support however, is less meaningful than the social and religious support he derives from those around him. Rabbi B. Rechavel, who works with a charity called the Aleph Institute, which supports incarcerated persons, first met Mr. Bloom during his incarceration, and has spent a good deal of time with Mr. Bloom since his release – Mr. Bloom stayed with the Rabbi when he was first released and the two now live around the corner from each other. Speaking for himself, not his organization, Rabbi Rechavel says that Mr. Bloom is flourishing in his new life and is widely liked

and admired in the community. Similarly, Rabbi Getzel Rubashkin, of the Congregation Anshel Moise in Brooklyn, says that Mr. Bloom strikes him as "a man of sincerely held religious belief," who is "well-liked by the community and is always there to offer assistance with a ready smile. He arrives early for services to pray, he often stays late to clean and organize the synagogue, and he is quick to volunteer his services where he may be a help."

Mr. Bloom has not committed any new offenses since his release, nor has he had any run ins with the law. He has not had any positive drug tests. United States Probation officer Ivette Farfan, who supervises him where he lives in the Eastern District of New York, opposes early termination for Mr. Bloom: "Mr. Bloom is considered a career offender and due to the conduct in the instant offense the Probation Department would not be in support of early termination. With regards to his treatment, Mr. Bloom was discharged with a maximum clinical benefit reach because he was not receptive to therapy."

Officer Farfan is referring to the fact that Mr. Bloom did not get along with the therapist assigned to him by Probation, and did believe there would be any therapeutic benefit to engaging with him. More generally, the criteria for early termination do not include the nature of the original offense, only "the conduct of the defendant released and the interest of justice."

The Government likewise opposes this request for early termination of supervision.

## DISCUSSION

A district court may terminate a person's federal supervision "at any time after the expiration of one year of supervised release. . . . if such action is warranted by the conduct of the [person on supervised release] and the interest of justice." 18 U.S.C. § 3583(e)(1). Before ruling on the motion, the district court must consider, in relevant part, the nature and circumstances of the offense, the movant's history and characteristics, the need to afford adequate deterrence, the need to protect the public, and the need to provide educational or vocational training. See id. The

most frequently cited grounds for early termination are "changed circumstances" and "exceptionally good behavior." *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997). But those grounds are not limits on a district court's authority to terminate supervised release; they are merely examples provided by the Second Circuit. *Trotter*, 321 F.Supp.3d at 359.

Courts in this Circuit also grant motions for early termination when an individual accomplishes the rehabilitative purpose of supervised release. Id. at 365 ("Automatically raising the issue [of early termination] in all cases after one year should be considered."); see also U.S.S.G. § 5D1.2, Application Note 5 (2016) (encouraging courts to grant early termination "in appropriate cases"). As the Second Circuit has repeatedly made clear, "[s]upervised release is not, fundamentally, part of the punishment; rather, its focus is rehabilitation." *United States v. Aldeen*, 792 F.3d 247, 252 (2d Cir. 2015). Once supervised release no longer fulfills its rehabilitative purpose, supervised release is no longer necessary. See *Johnson v. United States*, 529 U.S. 694, 709 (2000) ("Supervised release departed from the parole system it replaced by giving district courts the freedom to provide postrelease supervision for those, and only those, who needed it." (citing legislative history)). Supervision without the need for rehabilitation is not only unnecessary; it also "may increase the likelihood of recidivism" at the expense of misdirecting the "limited" "resources of the Probation Department." *Trotter*, 321 F.Supp.3d at 240. "Supervised release is directed to rehabilitation, not punishment. Thus, when its rehabilitative purposes have been accomplished as determined by a supervisee's overall conduct following release from prison, there is no reason for its continuation. Prolonging supervised release could disserve rehabilitation by over-scrutiny and, especially in this time of Probation Office budget reductions, result in unnecessary expenditures." *United States v. Ramos*, No. 3:11-

cr-001 (JBA), Order Granting Defendant's Motion for Early termination of Supervised Release, (D.Conn., March 17, 2020) at 1.

Mr. Bloom, now age 64, does not need continued supervision. He has steady employment, and has not committed any new offenses since his release. Most importantly, he has tremendous support from a large and caring community that will help him on his continuing path of rehabilitation. As such, Mr. Bloom's motion for early termination should be granted.

WHEREFORE, Ira Bloom respectfully requests that the Court terminate his term of supervised release.

Respectfully Submitted,

THE DEFENDANT,
Ira Bloom
FEDERAL DEFENDER OFFICE

Date: February 12, 2024                  /s/ Josh Ewing_____

Federal Defender
10 Columbus Blvd, 6th FL
Hartford, CT 06106
Phone: (860) 493-6260
Bar No. ct443715
Email: Josh_Ewing@fd.org

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 12, 2024, a copy of the foregoing motion was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Josh Ewing_____